UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

BRADFORD SURLOCK and MARY-ANNE SURLOCK,
individually and as next friends of MICHAEL SURLOCK,

                              Plaintiffs,

     -against-                                          No.: 5:11-cv-1121
                                                        (MAD/DEP)
NEW YORK STATE OFFICE FOR PEOPLE WITH
DEVELOPMENTAL DISABILITIES; KERRY DELANEY,
Commissioner, New York State Office for People with
Developmental Disabilities; JOHN GLEASON, Director,
Central New York DDSO; LYNETTE O'BRIEN, Deputy
Director, Central New York DDSO; ANTHONY DINUZZO,
Deputy Director of Quality Assurance, Central New York
DDSO; LAURIE ELLIOT, Treatment Team Leader, Central
New York DDSO, Fulton Office; BARBARA ALEXANDER,
Developmental Assistant III, Central New York DDSO, Fulton
Office; RON REID, House Director, Fravor Road IRA;
VICTORIA LEBOEUF, Former House Director, Fravor Road
IRA; AMY HILLARD, Assistant House Director, Fravor Road
IRA; TRACEY JASIEWICZ; FELICIA GRAHAM, and RAY
PERKINS, Former Assistant House Directors, Fravor Road,
IRA; MONIQUE DICKERSON, Fravor Road IRA Nurse;
DONNA MOTYKA, Former Fravor Road IRA Nurse; and
DENISE REYNOLDS, Former Fravor Road IRA Nurse, CORA
SPENCER, JEANETTE MAYNES, and DIANE FINSTER,
Fravor Road IRA Direct Care Staff; "MARY DOE" and "JANE
DOE" are persons employed by OPWDD whose identities are
not presently known,

                              Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DELANEY'S MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(B)(1).**

## TABLE OF AUTHORITIES

**Cases**

*All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006) ..6, 7

*Arizona v. California*, 460 U.S. 605, 618 (1983) ............................................................7

*Atlantic Health Care Benefits Trust v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993) ....................9

*Aurecchione v. Schoolman Transp. System, Inc.*, 426 F.3d 635 (2d Cir. 2005) ..............6

*Bernstein v. City of New York*, 621 Fed. Appx. 56, 57 (2d Cir. 2015) ..........................15

*Brown v. New York*, 975 F. Supp.2d 209, 220 (N.D.N.Y. 2013)....................................7

*Brown v. New York*, 975 F.Supp.2d 209, 226 ...............................................................11

*Carter v. HealthPort Techs., LLC,* 822 F.3d 47, 57 (2d Cir. 2016) ................................6

*Christianson v. Colt Operating Corp.*, 486 U.S. 800, 815-16 (1988) ............................7

*City of Lost Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)............................................15

*Edelman v. Jordan*, 415 U.S. 651, 678 (1974) ........................................................10, 13

*Ex parte Young*, 209 U.S.123, 155-156 (1908) ...........................................................10

*Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464 (1945) .......................13

*Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009)..........................6

*Green v. Mansour*, 474 U.S.64, 68 (1985) .................................................................10

*Hans v. Louisiana*, 134 U.S. 1, 10-11 (1890) .............................................................9

*Hayes v. Williamsville Cent. School Dist.*, 506 F.Supp. 2d 165, 170-71 (W.D.N.Y. 2007) ...........9

*Hu v. Skadden, Arps, Slate, Meagher & Flom, LLP*, 76 F.Supp.2d 476, 478 (S.D.N.Y. 1999)......6

*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) ...............................10

*In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) .....................................9

*In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007)......................................14

*Jackson v. Battaglia*, 63 F.Supp.3d 214, 220-21 (N.D.N.Y. 2014)..........................................10, 11

*Long v. Constantine*, 1996 WL279721, *2 (N.D.N.Y. Nov. 12, 1996)...........................................9

*Lucket v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002) ............................................................................6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)........................................................15

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)........................................................6

*Mancuso v. New York State Thruway Auth.*, 86 F.3d 289, 292 (2d Cir. 1996) ...............................9

*McAuliffe v. Carlson*, 520 F.2d 1305, 1308 (2d Cir. 1975)...........................................................13

*Milliken v. Bradley*, 433, U.S. 267 (1977).....................................................................................10

*New York City Health & Hospitals Corp. v. Perales*, 50 F.3d 129, 134 (2d Cir. 1995) ...............13

*O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) .........................................................................15

*Papasan v. Allain*, 478 U.S. 265, 278 (1986) ........................................................................12, 13

*Parella v. Johnson*, No. 1:15-cv-0863 (LEK)(DJS) 2016 WL 3566861, *3 (N.D.N.Y. Jun. 27,
   2016) ............................................................................................................................................6

*Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984)....................................10

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996)....................................................................9

*Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) .......................................................................15

*Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) ........................10, 14

*Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)...........7

*Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964) .............................................................7

**Other Authorities**

U.S. CONST. amend. XI.....................................................................................................................9

**Rules**

Fed. R. Civ. P 12(h)(3) .................................................................................6

Fed. R. Civ. P. 12(b)(1) ...........................................................................6, 7, 17

Fed. R. Civ. P. 12(g) .................................................................................6, 7

Fed. R. Civ. P. 12(h)(3) .................................................................................6

**Treatises**

18 C. Wright, A. Miller, & E. Cooper, FEDERAL PRACTICE & PROCEDURE § 4487 at 790 .............7

## PRELIMINARY STATEMENT

Plaintiffs commenced this action more than five years ago asserting a litany of shocking allegations against the New York State Office for People with Professional Disabilities ("OPWDD"), its commissioner, local administrators, managers, nurses and aides at every level of service in an Individualized Residential Alternative ("IRA") owned and run by OPWDD. Plaintiffs' Amended Complaint painted a picture of OPWDD as a bumbling, inept organization that was at best, worrisomely negligent, and at worst, permitted the abuse of Plaintiffs' mentally handicapped son, M.S.[1] As the parties engaged in discovery, a substantially different picture began to emerge, one that largely refuted the troubling allegations in Plaintiffs' Amended Complaint. As a result, the majority of the defendants in this matter successfully moved for summary judgment at the conclusion of discovery. This Court's 128-page Memorandum- Decision and Order carefully detailed how and why Plaintiffs' numerous allegations failed as a matter of law.

As the dust settled after this Court's decision, it revealed a dramatically altered landscape. Gone were fourteen of the eighteen defendants originally named in Plaintiffs' Amended Complaint. Gone were all allegations of substantive due process violations, save four isolated incidents of alleged abuse involving defendants Jeanette Maynes, Cora Spencer and Amy Hillard. Gone were all allegations of an ongoing violation of federal law. Most importantly, gone was this Court's subject matter jurisdiction over Defendant Kerry Delaney regarding Plaintiffs' claims for prospective injunctive relief.

The Eleventh Amendment divests this Court of subject matter jurisdiction over defendant Delaney because Plaintiffs' Amended Complaint no longer contains a single allegation of an

---

[1] Due to Plaintiffs' son's mental incapacity, and in order to be in compliance with appropriate privacy standards implemented by the Northern District, Plaintiffs' son is referred to by his initials, M.S., for the entirety of this motion.

ongoing violation of federal law. In point of fact, Plaintiffs' claims are now limited to four isolated incidents of abuse allegedly perpetrated by defendants Maynes, Spencer and Hillard. These claims are properly remedied through the award of monetary damages under 42 U.S.C. § 1983, and do not justify the imposition of injunctive relief. Regardless, because the sole basis of Plaintiffs' request for injunctive relief is isolated **past** allegations of abuse that are no longer occurring, the Eleventh Amendment bars this Court from adjudicating Plaintiffs' remaining claim against defendant Delaney. Moreover, Plaintiffs lack standing to seek injunctive relief as they cannot establish M.S. is facing an immediate threat of harm. For these reasons, Plaintiffs' Amended Complaint, as against defendant Kerry Delaney, should be dismissed.

## FACTUAL AND PROCEDURAL HISTORY

This action arose out of allegations that defendants violated the constitutional rights of Plaintiffs and their son pursuant to 42 U.S.C. § 1983. Plaintiffs' son is a person with developmental disabilities who has resided in an Individualized Residential Alternative run by the OPWDD since 2007. Plaintiffs' son presently resides at OPWDD's Central Square Individualized IRA. Dkt. # 53, ¶ 1.[2] Prior to M.S.'s transfer to the Central Square IRA he lived at the Fravor Road IRA from October 2007 to December 2012. Dkt. # 53, ¶ 2.

On February 20, 2013, Plaintiffs filed an Amended Complaint against eighteen separate defendants, asserting nine separate causes of action. Dkt. # 53. Plaintiffs' first, second and third causes of action, asserted against all defendants, claimed that M.S.'s substantive due process rights were violated under 42 U.S.C. § 1983. Dkt. # 53, pp. 32-24. Plaintiffs alleged that defendants

---

[2] Plaintiffs Amended Complaint does not include any claims arising out of M.S.'s tenure as a resident at the Central Square IRA. Further, this litigation was limited to allegations solely arising out of M.S.'s stay at the Fravor Road IRA. *See* Dkt. # 74. The Order of Magistrate Judge Peebles limited discovery in this matter to the time period M.S. was a resident at Fravor Road. Further, in an April 16, 2014 Minute Entry, Judge Peebles stated that discovery would not be opened as to a second facility and that plaintiffs would need to commence a new action regarding claims at that facility.

subjected M.S. to a "recurring pattern of abuse and neglect" resulting in physical and psychological injury and that their "egregious abuse" constituted "constitutionally arbitrary, conscience-shocking conduct." Dkt. # 53, p. 32. Plaintiffs claimed that by subjecting M.S. to this recurring pattern of abuse and neglect, defendants breached their constitutional duty to protect him from harm. Dkt. # 53, p. 33. Plaintiffs also alleged that defendants failed to provide M.S. with minimally adequate treatment, including a humane living environment, protections from harm, freedom from restrictive interventions and an appropriately trained and qualified staff. Dkt. # 53, p. 34.

Plaintiffs Amended Complaint also alleged that defendants discriminated against M.S. on the basis of his autism and neurological impairment in violation of the Americans with Disabilities Act. Dkt. # 53, p. 35. Plaintiffs Brad and Mary-Anne Surlock asserted that defendants retaliated against them for complaining about the "abuse and neglect" their son experienced while a resident at Fravor Road. Dkt. # 53, p. 37. Finally, Plaintiff Brad Surlock claimed that the supervisory and administrative defendants violated the First Amendment by prohibiting him from seeing his son, in addition to violating his due process rights by periodically prohibiting him from seeing his son without providing him an opportunity to be heard.[3] Dkt. # 53, pp. 38-39. Plaintiffs' Amended Complaint seeks the following relief:

1.   An order "requiring Defendants to provide [Plaintiff] with a one-to-one aide;"

2.   An order establishing a "fund with sufficient resources to place [and keep the plaintiff] in . . . an independent living facility, or other similar arrangement, in which he shall receive constant and direct care;" and

3.   An injunction prohibiting the "Defendants from engaging in abusive or neglectful conduct" toward Plaintiff. Dkt. # 53, p. 40, ¶¶ F-G.

---

[3] Plaintiffs also asserted two state law claims for negligent hiring/supervision and medical malpractice.

Dkt. # 65.[4]  The Hon. Norman A. Mordue, in a Memorandum Decision and Order dated March 4, 2014, granted defendants' motion in part and denied defendants' motion in part. Dkt. # 106, pp. 17-18.  Specifically, Judge Mordue dismissed all claims against the OPWDD, dismissed all claims against OPWDD Commissioner Courtney Burke,[5] except Plaintiffs' claims against her in her official capacity for prospective injunctive relief; dismissed Plaintiffs' claims for violations of the Americans with Disabilities Act; limited all claims against the named defendants in their official capacities to the request for prospective injunctive relief and permitted the remaining claims to moved forward against the named defendants in their individual capacities. Dkt. # 106, pp. 17-18. Judge Mordue's Memorandum Decision and Order allowed the parties to move forward with discovery on Plaintiffs' remaining claims, namely their allegations of substantive due process violations, due process violations, and First Amendment retaliation.

At the conclusion of discovery, all defendants, except Amy Hillard and Kerry Delaney, moved for summary judgment pursuant to Federal Rule of Civil Procedure Rule 56. Dkt. #'s 238-262.[6] On June 8, 2016, this Court issued a 128-page Memorandum- Decision and Order granting defendants Graham, Finster, Elliott, Alexander, Reid, LeBoeuf, Perkins, Dickerson, Motyka, Reynolds, Gleason, O'Brien and Dinuzzo's motions for summary judgment in their entirety. Dkt. # 423, pp. 127-28.  Critical for the purposes of the instant motion is that dismissal of Plaintiffs'

---

[4] All defendants were originally represented by the New York State Attorney General's Office.  Their defense was subsequently split and the various classes of defendants obtained separate counsel.

[5] Courtney Burke was the Director of the OPWDD during M.S.'s residency at Fravor Road and at the time Plaintiffs' commenced this action. In the middle of this litigation, she left the position and was replaced by Kerry Delaney.  Due to the fact that the claims against the director were limited to the office's official capacity, Ms. Delaney was substituted as the appropriate defendant on August 29, 2014. *See* Dkt. # 163.

[6] Plaintiffs' opposition to the motion withdrew all claims against defendant Jasiewicz; the First Amendment Claims against defendants Graham, Dickerson, Reynolds, Motyka, Maynes and Finster; the intimate association claim against all defendants; and the procedural due process claim against defendants LeBoeuf, Reid, Perkins and Graham. *See* Dkt. No. 371 at 11.

claims against these defendants disposed of all allegations of a continuing or ongoing violation of federal law.

This Court also granted in part and denied in part defendants Maynes and Spencer's motions for summary judgment. *Id.* at p. 127. More specifically, defendant Maynes' summary judgment motion was granted as it pertained to allegations of negligence regarding medication errors, wrist splint applications and failure to report. *Id.* Defendant Maynes' motion for summary judgment concerning Plaintiffs' claim that she abused M.S. on March 25, 2011 was denied. *Id.* Similarly, Defendant Spencer's motion for summary judgment was denied only as to the allegation that she placed a laundry basket over M.S.'s head and improperly used abusive language in the Fravor Road IRA. *Id.*

This Court's Memorandum-Decision and Order disposed of the large majority of Plaintiffs' claims in this action. As a result of this Court's most recent decision, as well as the prior decision of Judge Mordue, Plaintiffs have only ***three*** substantive due process claims currently pending: 1) against defendant Maynes, in her individual capacity, for the single allegation of abuse on March 25, 2011; 2) against defendant Spencer, in her individual capacity, for the allegations of abuse involving the laundry basket and abusive language; and 3) all claims against defendant Hillard.[7] Also presently intact are Plaintiffs' claims against Defendant Kerry Delaney, in her official capacity, for prospective injunctive relief. Dkt. #423, p. 128.

---

[7] Plaintiffs have asserted no unique supervisory allegations against Defendant Hillard. She, along with the remaining defendants, are entitled to the preclusive benefit of the law of the case doctrine regarding the supervisory allegations against her. *See*, Point I, *infra*.

## ARGUMENT

### A.    STANDARD OF REVIEW

Rule 12(b)(1) of the Federal Rules of Civil Procedure empowers a defendant to challenge a court's subject matter jurisdiction over a particular claim or suit. Lack of subject matter jurisdiction cannot be waived by a party; indeed, a motion to dismiss for lack of subject matter jurisdiction *may be properly made and granted at any time*. *See Hu v. Skadden, Arps, Slate, Meagher & Flom, LLP*, 76 F.Supp.2d 476, 478 (S.D.N.Y. 1999) (emphasis added); *see also* Fed. R. Civ. P 12(h)(3) ("If the court determines *at any time* that it lacks subject-matter jurisdiction, the court *must* dismiss the action"). "Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). If the moving party's jurisdictional challenge is based on factual evidence, "'plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant'" *Parella v. Johnson*, No. 1:15-cv-0863 (LEK)(DJS) 2016 WL 3566861, *3 (N.D.N.Y. Jun. 27, 2016) (quoting *Carter v. HealthPort Techs., LLC,* 822 F.3d 47, 57 (2d Cir. 2016)). It is the *plaintiff's burden* to prove subject matter jurisdiction by a preponderance of the evidence. *Aurecchione v. Schoolman Transp. System, Inc.*, 426 F.3d 635 (2d Cir. 2005) (citing *Lucket v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002)) (emphasis added).

Constitutional standing, like subject matter jurisdiction, is "a limitation on the *authority of a federal court* to exercise jurisdiction." *All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006). The issue can be raised at any time during litigation, even if a prior Rule 12 motion was made. *See id.;* Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(h)(3); Fed.

R. Civ. P. 12(g) (creating exception to the one-motion rule where lack of subject matter jurisdiction is raised). In the Second Circuit, "the proper procedural route" to challenge constitutional standing is a Rule 12(b)(1) motion. *All. For Envtl. Renewal*, 436 F.3d at 88 n.6.

## POINT I

### PLAINTIFFS' SUPERVISORY CLAIMS AGAINST DEFENDANT HILLARD ARE SUBJECT TO THE LAW OF THE CASE DOCTRINE

The law of the case doctrine posits that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Operating Corp.*, 486 U.S. 800, 815-16 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983); *Brown v. New York*, 975 F. Supp.2d 209, 220 (N.D.N.Y. 2013 (D'Agostino, J.) (quoting similar language). "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964). The law of the case is generally applicable where the current issue is the same as the prior issue unless there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice". *Id.* (citing 18 C. Wright, A. Miller, & E. Cooper, FEDERAL PRACTICE & PROCEDURE § 4487 at 790).

Plaintiffs' Amended Complaint and Interrogatory Responses as to defendant Hillard allege that during her tenure as Assistant House Director of the Fravor Road IRA, "house staff reporting to her committed eight medication administration failures and six reported incidents of staff abuse and/or neglect of M.S., who was admitted on four occasions to the emergency room." *See* Exhibit "A", ¶ 1, Plaintiffs' Supplemental Response and Objections to Defendant Hillyard's (sic) Interrogatories. Plaintiffs also allege that under defendant Hillard's watch, M.S.'s wrist splint was

not used appropriately, his toileting skills regressed, and he sustained a number of injuries due to defendant Hillard's failure to properly supervise and train her staff. *Id.* These claims remain pending to date.

The supervisory claims against defendant Hillard are identical to the claims levied against the other Supervisory Defendants in this action.[8] There is not one single allegation regarding Plaintiffs' supervisory claims *that is unique* to defendant Hillard. This Court's Memorandum-Decision and Order has already ruled, as a matter of law, that the supervisory allegations currently pending against defendant Hillard are insufficient to establish a violation of M.S.'s substantive due process rights. Dkt. # 423, pp. 72-82. In particular, this Court noted that "the undisputed facts establish that the Supervisory Defendants [the group to which defendant Hillard is alleged to have belonged] *went above and beyond* to accommodate the [Plaintiffs'] constant demands and *did all that they could to* provide [M.S.] with the best care possible . . . the Supervisory Defendants have demonstrated that they are entitled to summary judgment as to Plaintiffs' substantive due process claims." Dkt. # 423, p. 82 (emphasis added).

As Plaintiffs have failed to set forth any supervisory claims against defendant Hillard *that differ* from the allegations against the other Supervisory Defendants that this Court has already deemed insufficient as a matter of law, defendant Hillard is entitled to application of the law of the case doctrine and dismissal of all supervisory claims against her. Plaintiffs' remaining claim against defendant Hillard alleges that she physically abused M.S. on *one* occasion while he was a resident at the Fravor Road IRA and used improper language at Fravor Road. There is no dispute that these allegations are stated against defendant Hillard in her individual capacity. This claim against defendant Hillard, like the remaining allegations of abuse against defendants Maynes and

---

[8] The "Supervisory Defendants" consist of defendants Elliott, Alexander, Reid, LeBoeuf and Perkins.

Spencer concern **past** violations of federal law, and seek the type of **retrospective relief** that is prohibited by the Eleventh Amendment as discussed below.

## POINT II

## THE ELEVENTH AMENDMENT DEPRIVES THIS COURT OF SUBJECT MATTER JURISDICTION OVER DEFENDANT DELANEY

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Supreme Court has "interpreted the Eleventh Amendment to extend to suits by all person against a state in federal court." *Mancuso v. New York State Thruway Auth.*, 86 F.3d 289, 292 (2d Cir. 1996) (citing *Hans v. Louisiana*, 134 U.S. 1, 10-11 (1890)). Accordingly, the Eleventh Amendment is generally treated as more than "a 'personal privilege' of the state . . . but also a jurisdictional limitation on the power of federal courts." *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) (citation omitted); *see also Long v. Constantine*, 1996 WL279721, *2 (N.D.N.Y. Nov. 12, 1996) ("Eleventh Amendment immunity is a jurisdictional bar that can be raised *sua sponte* by the court because it 'affects our subject matter jurisdiction.'") (quoting *Atlantic Health Care Benefits Trust v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993)). "The Eleventh Amendment effectively places suits by private parties against states outside the ambit of Article III of the Constitution" unless Congress waives Eleventh Amendment in a statutory scheme or the State waives its immunity. *Id.* (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996); *see also Hayes v. Williamsville Cent. School Dist.*, 506 F.Supp. 2d 165, 170-71 (W.D.N.Y. 2007) (rejecting Congressional Eleventh Amendment waiver for § 1983, ADA, and FERPA claims but accepting it for Rehabilitation Act, IDEA, and Title VI claims).

The United States Supreme Court, in *Ex parte Young*, held that the Eleventh Amendment does not preclude a suit against a state to be filed if the complaint seeks prospective injunctive relief to prevent a ***continuing violation of federal law***. *Ex parte Young*, 209 U.S.123, 155-156 (1908) (emphasis added). *Ex parte Young* relief allows a plaintiff to circumvent Eleventh Amendment immunity so long as the requested relief is "prospective." *See Green v. Mansour*, 474 U.S.64, 68 (1985). The exception is due to the fact that "[r]emedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." *Id.* (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984); *Milliken v. Bradley*, 433, U.S. 267 (1977). The Supreme Court, however, has repeatedly held that *Ex parte Young* relief is inapplicable when the asserted claims seek only ***retrospective relief***. *See, e.g.*, *Green*, 474 U.S. at 68 ("Compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment."); *see also Pennhurst*, 465 U.S. at 102-103 (noting that retroactive relief is barred by the Eleventh Amendment); *Edelman v. Jordan*, 415 U.S. 651, 678 (1974) (holding that *Ex parte Young* relief does not allow for retroactive monetary relief).

In order to invoke the *Ex parte Young* exception, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges [1] an ongoing violation of federal law and [2] seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (first citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment); and then citing *Id.*, at 298–99 (Souter, J., joined by Stevens, Ginsburg, and Breyer, JJ., dissenting). Relief is characterized as "prospective" ***if it is able to remedy a future violation of federal law***. *See Jackson v. Battaglia*, 63 F.Supp.3d 214, 220-21 (N.D.N.Y. 2014) (emphasis added) (dismissing plaintiff's claims for *Ex parte Young* relief because her complaint

consisted solely of allegations concerning past violations of federal law); *see also Brown v. New York*, 975 F.Supp.2d 209, 226 ("[T]he Eleventh Amendment 'does not permit judgment against state officers declaring that they violated federal law in the past.'") (internal citations omitted).

A straightforward inquiry into Plaintiffs' Amended Complaint definitively establishes that their remaining allegations are legally insufficient to invoke the *Ex parte Young* exception to Eleventh Amendment immunity. It is well settled under *Ex parte Young* and its progeny that in order to circumvent the Eleventh Amendment's bar on suits against the states (or its officials), Plaintiffs ***must allege*** an ongoing violation of federal law. This Court's June 8, 2016, Memorandum Decision and Order disposed of ***each and every one*** of Plaintiffs' allegations concerning an ongoing violation of federal law, noting that the only claims remaining concern four isolated allegations of past abuse against defendants Maynes, Spencer and Hillard. Dkt. # 423, pp.126-28.[9] As Plaintiffs' Amended Complaint now consists solely of allegations concerning violations of federal law that occurred prior to the time the Amended Complaint was filed, they have no legal basis to seek prospective injunctive relief and their claims against defendant Delaney must be dismissed. *See Jackson v. Battaglia*, 63 F.Supp.3d at 220-21.

Finally, to the extent that Plaintiffs may argue that defendant Hillard is not entitled to application of the law of the case doctrine regarding the supervisory claims, Plaintiffs are still not entitled to *Ex parte Young* relief in this matter. Plaintiffs' claims are limited to M.S.'s tenure as a resident at the Fravor Road IRA. *See* FN 2, *supra*. A review of Plaintiffs' Amended Complaint and Interrogatory Responses to each defendant establishes that there is not a **single** allegation that pertains to any OPWDD institution other than Fravor Road. *Ex parte Young* relief is limited to

---

[9] The Memorandum Decision and Order does note that the supervisory claims against defendant Hillard also remain, however, as discussed in Point I, defendant Hillard is entitled to summary judgment on those claims pursuant to the law of the case doctrine. *See* Point I, *supra*.

prospective injunctive relief necessary to remedy an ongoing violation of federal law. M.S. no longer resides at the Fravor Road IRA. Defendant Hillard was removed from the Fravor Road IRA at the conclusion of an investigation into allegations of abuse and has no contact with M.S. She also has no supervisory responsibilities over OPWDD employees who continue to work with M.S. at the Central Square IRA. Plaintiffs' supervisory claims against defendant Hillard pertain solely to past allegations of constitutional violations, which are remediable through an award of monetary damages under 42 U.S.C. § 1983, rather than through injunctive relief. Accordingly, even if this Court was to find that the law of the case doctrine is inapplicable to Plaintiffs' supervisory claims against defendant Hillard, it still lacks subject matter jurisdiction over defendant Delaney because Plaintiffs' supervisory claims against defendant Hillard do not allege an ongoing violation of federal law.[10]

### POINT III

### *EX PARTE YOUNG* PRECLUDES THE USE OF STATE MONIES TO ESTABLISH A FUND TO PROVIDE FOR M.S.'s CARE

In addition to seeking injunctive relief requiring the production of a "1:1 aide" for M.S., Plaintiffs also seek an "order requiring defendants to establish a fund with sufficient resources to place [and keep] Michael in . . . an independent living facility, or other similar arrangement, in which he shall receive constant and direct care and the other resources his disability requires." Dkt. # 53, p. 40. This Court has no authority to order such relief under *Ex parte Young* and its progeny.

The Eleventh Amendment bars a **direct** payment by the state to a litigant, whether a plaintiff designates the remedy as equitable relief or names a state official in her official capacity, ***unless*** the payment is a necessary condition of ***future*** compliance with federal law. *See Papasan*

---

[10] This Court appeared to agree with this analysis in its Memorandum Decision and Order noting "[i]t is unclear from the amended complaint what injunctive relief Plaintiffs believe they are entitled to, especially since [M.S.] no longer resides at Fravor Road." *See* Dkt. #423, p. 128, n. 26.

*v. Allain*, 478 U.S. 265, 278 (1986); *Edelman*, 415 U.S. at 668 (monetary effects limited to incidental, indirect expenditures to cure prospective injuries). In this case, although Kerry Delaney is the named defendant, any award of damages will ultimately be paid by the State of New York, making it "the real party in interest". *See McAuliffe v. Carlson*, 520 F.2d 1305, 1308 (2d Cir. 1975); *see also New York City Health & Hospitals Corp. v. Perales*, 50 F.3d 129, 134 (2d Cir. 1995). ("'[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and it is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.'") (quoting *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464 (1945). Simply put, the Eleventh Amendment ***does not permit*** a court to order relief where "the relief is tantamount to an award of damages . . . even though styled as something else." *Papasan*, 478 U.S. at 278. (citations omitted).

Here, Plaintiffs' request for the establishment of a fund would require ***a direct payment*** from the New York State Treasury for relief that is not necessary to ensure future compliance with a federal law. *See Papasan, supra*. This Court has dismissed Plaintiffs' claims that defendants are perpetrating ongoing violations of federal law and has limited Plaintiffs' claims to four isolated allegations of past abuse. *See* Dkt. #423, p. 127-128. If Plaintiffs were to be awarded monies from the state treasury to establish this fund, they would be receiving payment directly from the state to ensure the State of New York is in compliance with federal law for acts ***that are no longer occurring***, a remedy that is ***specifically prohibited*** by the Eleventh Amendment. *See Papasan*, 478 U.S. at 277-78 ("[C]ompensatory or deterrence interests are insufficient to overcome the . . . Eleventh Amendment [and] [r]elief that . . . serves to compensate a party injured in the past by an action of a state official . . . is barred even when the state official is the named defendant."). Plaintiffs request for the establishment of a fund is nothing more than a veiled attempt to recoup

compensatory damages for *past violations* of federal law. The establishment of a fund for prior, isolated claims of abuse is not a valid use of the *Ex parte Young* exception to the Eleventh Amendment's prohibition on awarding damages to a citizen.

## POINT IV

### PLAINTIFFS LACK STANDING TO SEEK AN INJUNCTION

The record in this matter clearly establishes that the individuals who have allegedly violated M.S.'s constitutional rights in the past no longer have contact with him in any capacity. Indeed, defendant Maynes is no longer employed by the OPWDD and Defendants Hillard and Spencer do not work at the Central Square IRA where M.S. currently resides. It is *impossible* for Plaintiffs to claim that the remaining allegations of substantive due process violations at Fravor Road are ongoing when M.S. no longer resides at the Fravor Road facility, and defendants Maynes, Spencer and Hillard do not have any contact with M.S. at the Central Square IRA where he presently resides. These undisputed facts preclude the imposition of *Ex parte Young* relief. *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) ("[T]he *Young* doctrine is straightforward: A plaintiff may avoid the Eleventh Amendment bar . . . provided that his complaint 'alleges an ongoing violation of federal law'") (quoting *Verizon Md.*, 535 U.S. at 645). As such, Plaintiffs' request for 1:1 staffing and establishment of a fund cannot be ordered by this Court because it lacks subject matter jurisdiction. *See* Point II and III, *supra*.

Plaintiffs' Amended Complaint, however, contains one final request for relief, a demand for an injunction prohibiting the "Defendants from engaging in abusive or neglectful conduct" towards M.S. Dkt. # 53, p. 40, ¶¶ F-G. Plaintiffs, however, lack the standing necessary to seek such relief.

In order to meet the constitutional standing requirements, "a plaintiff must prove (1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision." *Bernstein v. City of New York*, 621 Fed. Appx. 56, 57 (2d Cir. 2015) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). A party who seeks injunctive relief "must carry the burden of establishing that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'" *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (quoting *City of Lost Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). In other words, "[t]he injury or threat of injury must be both '***real and immediate***,' not 'conjectural' or 'hypothetical.'" *Id.* at 494 (emphasis added).

The Supreme Court's decision in *Lyons* illustrates this principle. In *Lyons*, the plaintiff was placed in a chokehold by Los Angeles Police Department personnel during a traffic stop. *See Lyons*, 461 U.S. at 105. Plaintiff in Lyons sued for money damages under § 1983 and also sought an injunction precluding Los Angeles police officers from using chokeholds in the future. *See id.* The Supreme Court rejected plaintiff's argument that he had standing to seek an injunction based on his own experience of being placed in a chokehold in the past, as well as allegations that "police in Los Angeles routinely apply chokeholds" despite a policy limiting their use. *See id.* The Supreme Court held that plaintiff ***lacked standing*** to pursue prospective equitable relief based on his past experience with police chokeholds because he "had an adequate remedy at law," via §

1983 and because the plaintiff could not show "a sufficient likelihood that *he* w[ould] again be wronged in a similar way." *See id.* at 111-12 (emphasis added).

As this Court correctly noted in its Memorandum-Decision and Order, Plaintiffs' demand for injunctive relief is inherently flawed due to the fact that M.S. no longer resides at the Fravor Road IRA. Dkt. #423, p. 128, n. 26. As such, it is unclear how an injunction prohibiting abusive or neglectful conduct towards M.S. at Fravor Road would have any effect since M.S. no longer resides at that facility. Regardless, an analysis of Plaintiffs' demand for relief under *Lyons*, clearly establishes that Plaintiffs have no standing to seek injunctive relief in this matter.

Plaintiffs' claims are limited to four isolated incidents of abuse that allegedly occurred while M.S. was a resident at the Fravor Road IRA. These incidents, in and of themselves, are insufficient to "demonstrate a case or controversy with the [OPWDD] that would justify the equitable relief sought." *See Lyons*, 461 U.S. at 106. The allegations that M.S. may have been subjected to four isolated incidents of abuse at the hands of defendants Maynes, Spencer and Hillard, while deplorable, ***does not establish*** that he faces a "real and immediate threat" he will again be subject to abuse by these three individuals. M.S. no longer has ***any contact*** with the three defendants alleged to have abused him during his residency at Fravor Road.[11] M.S. no longer resides at Fravor Road, so it is impossible that he faces a real and immediate threat from his residence at the facility. However, even assuming, *arguendo*, that M.S. was still in contact with these three defendants, or residing at the Fravor Road IRA, in order for Plaintiff to establish standing to seek injunctive relief under *Lyons*, they would have to show either 1) that all OPWDD employees abused M.S. when they encountered him, or 2) that the OPWDD ordered or authorized its employees to act in such a manner. *See Lyons*, 461 U.S. at 107.

---

[11] Defendant Maynes was terminated by the OPWDD and defendants Hillard and Spencer do not work at the Central Square IRA where M.S. currently resides.

Plaintiffs cannot make either showing, nor have they attempted to do so in their pleadings or motion papers filed to date. Indeed, the record shows, and this Court has found, that allegations of abuse were *limited* to four isolated incidents involving OPWDD employees. Further, there is no evidence in the record, nor do Plaintiffs allege, that the OPWDD ordered or authorized these individuals to allegedly abuse M.S. The record, in fact, establishes just the opposite, evidencing a thorough investigation of any allegations of abuse with punishment doled out where warranted. There is no factual basis to conclude that M.S. faces a "real and immediate threat" of abuse at the hands of OPWDD employees. Accordingly, pursuant to the Supreme Court's decision in *Lyons,* Plaintiffs lack the necessary standing to seek the injunctive relief set forth in their Amended Complaint.

## CONCLUSION

Based on the foregoing, defendant Kerry Delaney respectfully requests an Order of this Court granting her motion to dismiss Plaintiffs' claims against her in the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1).

**DATED:**        August 25, 2016              **SMITH, SOVIK, KENDRICK & SUGNET, P.C.**

By: _____
          Michael Paul Ringwood, Esq.
          Bar Roll No.: 102446
          *Attorneys for Defendant Kerry Delaney*
          250 South Clinton Street, Suite 600
          Syracuse, New York 13202
          Tel: (315) 474-2911
          Fax: (315) 474-6015
          E-Mail: Mringwood@smithsovik.com