**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**BRADFORD J. SURLOCK,** *individually and as next friend of Michael Surlock*, **and MARY-ANNE SURLOCK,** *individually and as next friend of Michael Surlock,*

       **Plaintiffs,**

 vs.             **5:11-cv-1121
                     (MAD/DEP)**

**KERRY DELANEY,** *Acting Commissioner of the New York State Office For People With Developmental Disabilities*; **AMY HILLARD,** *Assistant House Director, Fravor Road IRA*; **CORA SPENCER,** *Fravor Road IRA Direct Care Staff*; **and JEANETTE MAYNES,** *Fravor Road IRA Direct Care Staff*,

       **Defendants.**
_____

| | |
|---|---|
| **APPEARANCES:** | **OF COUNSEL:** |
| **OFFICE OF GUSTAVE J. DIBIANCO**<br>62 Cherry Tree Circle<br>Liverpool, New York 13090<br>Attorneys for Plaintiffs | **GUSTAVE J. DIBIANCO, ESQ.** |
| **SUSSMAN & WATKINS**<br>55 Main Street, Suite 6<br>P.O. Box 1005<br>Goshen, New York 10924<br>Attorneys for Plaintiffs | **MICHAEL H. SUSSMAN, ESQ.** |
| **OFFICE OF WILLIAM J. PORTA**<br>42 Maple Avenue<br>Hamilton, New York 13346<br>Attorneys for Plaintiffs | **WILLIAM J. PORTA, ESQ.** |
| **SMITH, SOVIK, KENDRICK &<br>SUGNET, P.C.**<br>250 South Clinton Street<br>Suite 600 | **MICHAEL P. RINGWOOD, ESQ.<br>JOHN P. COGHLAN, ESQ.<br>KAREN G. FELTER, ESQ.** |

Syracuse, New York 13202-1252
Attorneys for Defendant Delaney

**OFFICE OF LESLIE R. LEWIS**       **LESLIE R. LEWIS, ESQ.**
23 Genesee Street
New Hartford, New York 13413
Attorneys for Defendant Hillard

**MACKENZIE HUGHES LLP**      **JENNIFER PLOETZ WILLIAMS, ESQ.**
101 South Salina Street      **MARK R. SCHLEGEL, ESQ.**
P.O. Box 4967
Syracuse, New York 13221-4967
Attorneys for Defendant Spencer

**AMDURSKY, PELKY, FENNELL &**      **TIMOTHY J. FENNELL, ESQ.**
**WALLEN, P.C.**
26 East Oneida Street
Oswego, New York 13126
Attorneys for Defendant Maynes

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Michael Surlock is a profoundly disabled young man who resides in the care and custody of the State of New York. *See* Dkt. No. 371 at 9. He has a severe form of autism and an intelligence quotient in the range of profound to severe mental retardation. *See id.* Michael is non-verbal, cannot perform most basic life-sustaining tasks on his own, engages in self-injurious behavior ("SIB") and requires constant, around-the-clock supervision just to survive. *See id.* Michael also suffers from epilepsy and osteoporosis. *See id.* at 12. In October of 2007, it became evident that Michael (then twenty five) required full-time care in a residential facility, so his parents, Bradford and Mary-Anne Surlock, placed him in the care and custody of the New York State Office for People with Developmental Disabilities ("OPWDD" or the "agency"). *See id.* The agency placed him at Fravor Road Individual Residential Alternative ("IRA"), a facility it

owned and operated in Mexico, New York. *See id.* Michael's care at Fravor Road was governed by multiple Skill Acquisition Plans ("SAPs"), Residential Habilitation Plans ("RHPs"), Individual Plans of Protective Oversight ("IPPOs"), and Behavior Plans. *See* Dkt. No. 390-1 at ¶ 9. Michael lived at Fravor Road until December 18, 2012, when the agency moved him to the Central Square IRA in Central Square, New York. *See* Dkt. No. 371 at 12.

Michael Surlock and his parents commenced this action on September 21, 2011, asserting claims for constitutional violations pursuant to 42 U.S.C. § 1983, claims under Title II of the Americans with Disabilities Act ("ADA"), and claims under New York State common law. *See* Dkt. No. 1. Thereafter, Plaintiffs amended the complaint and Judge Mordue granted in part and denied in part Defendants' joint motion to dismiss the amended complaint. *See* Dkt. No. 106.[1]

On September 30, 2015, through seven separate motions, sixteen of the eighteen Defendants moved for summary judgment on Plaintiffs' claims. In a 128 page Memorandum-Decision and Order dated June 8, 2016, the Court dismissed all of Plaintiffs' claims, except for the following: (1) Plaintiffs' substantive due process claim against Defendant Jeannette Maynes arising from a March 25, 2011 incident during which Plaintiffs claim that she physically assaulted Michael; (2) Plaintiffs' substantive due process claim against Defendant Cora Spencer arising from her alleged pervasive verbal abuse of Michael and an incident in which she allegedly placed a laundry basket on Michael's head; (3) all of Plaintiffs' claims against Defendant Amy Hillard; and (4) Plaintiffs' claims for prospective injunctive relief against Defendant Kerry Delaney.[2] *See*

---

[1] Defendants were originally all represented by the New York State Attorney General's Office.

[2] At the time Plaintiffs commenced this action, Courtney Burke was OPWDD's Commissioner. Burke was succeeded by Defendant Kerry Delaney, who has replaced Burke in the caption of this matter.

Dkt. No. 423. In its Memorandum-Decision and Order, the Court noted that, although counsel for Defendant Delaney filed a motion for summary judgment on behalf of Defendants Gleason, O'Brien and DiNuzzo, the motion did not seek any relief on behalf of Defendant Delaney. *See id.* at 4 n.2. Moreover, Plaintiffs indicated in their response that they intended to "continue all of their Section 1983 claims for prospective injunctive relief against Kerry Delaney in her official capacity as OPWDD Commissioner[.]" Dkt. No. 371 at 3 n.5. After noting Plaintiffs' intention, the Court indicated its belief that it is "unclear from the amended complaint what injunctive relief Plaintiffs believe that they are entitled to, especially since Michael no longer resides at Fravor Road. Without the benefit of the parties' guidance, however, Defendant Delaney shall remain in this action in her official capacity." Dkt. No. 423 at 128 n.26.

Currently before the Court is Defendant Delaney's motion to dismiss for lack of subject matter jurisdiction.

## II. BACKGROUND

For a complete recitation of the relevant factual background, the Court refers the parties to the June 8, 2016 Memorandum-Decision and Order. *See* Dkt. No. 423**.**

## III. DISCUSSION

### A.  Claims Against Defendant Hillard

In her motion, Defendant Delaney first asks the Court to dismiss the supervisory claims against Defendant Hillard under the law of the case doctrine. *See* Dkt. No. 430-1 at 11-13. According to Defendant Delaney, Plaintiffs' amended complaint and interrogatory responses as to Defendant Hillard allege that, during her tenure as Assistant House Director of the Fravor Road IRA, "'house staff reporting to her committed eight medication administration failures and six reported incidents of staff abuse and/or neglect of M.S., who was admitted on four occasions to

4

the emergency room.'" *Id.* at 11 (quotation omitted). Further, Plaintiffs allege that under Defendant Hillard's watch, Michael's "wrist splint was not used appropriately, his toileting skills regressed, and he sustained a number of injuries due to [D]efendant Hillard's failure to properly supervise and train her staff." *Id.* at 11-12. Plaintiffs, however, contend that the Court should deny Defendant Delaney's request to dismiss these claims against Defendant Hillard as procedurally improper. *See* Dkt. No. 443 at 6-8. Further, Plaintiffs contend that even if the Court considers the merits of Defendant Delaney's argument, it should be rejected on the merits. *See id.* at 7. Plaintiffs argue that "[t]he sole basis for Delaney's request to dismiss plaintiffs' supervisory claims against Hillard is that such relief is warranted by the law of the case doctrine because the court has already granted summary judgment to the other supervisory defendants on similar claims, and she uses plaintiffs' responses to Hillard's interrogatories to support her argument. But her reasoning is flawed. Even though plaintiffs' supervisory claims against Hillard are related to their supervisory claims against the other supervisory defendants, each supervisory defendant is an individual person potentially subject to supervisory liability for their own actions or omissions." *Id.*

Although the Court suspects that the supervisory claims against Defendant Hillard will be subject to dismissal for the same reasons set forth in the Court's June 8, 2016 Memorandum-Decision and Order, the Court declines to dismiss the claim at this time. Defendant Hillard has not moved for dismissal and it would be improper to grant such relief through Defendant Delaney's motion to dismiss.

**B.    Eleventh Amendment Immunity**

Defendant Delaney contends that "[a] straightforward inquiry into Plaintiffs' Amended Complaint definitively establishes that their remaining allegations are legally insufficient to

5

invoke the *Ex parte Young* exception to Eleventh Amendment immunity." Dkt. No. 430-1 at 15. According to Defendant Delaney, this Court's June 8, 21016 Memorandum-Decision and Order "disposed of ***each and every one*** of Plaintiffs' allegations concerning an ongoing violation of federal law, nothing that the only claims remaining concern four isolated allegations of past abuse against defendants Maynes, Spencer and Hillard." *Id.* (emphasis in original). Even assuming that the supervisory claim against Defendant Hillard is not subject to dismissal, Defendant Delaney argues that *Ex parte Young* is still not applicable because Plaintiffs' claims are limited to Michael's tenure as a resident at the Fravor Road IRA. *See id.* Defendant Delaney argues that a review of the Amended Complaint and Interrogatory Responses to each Defendant "establishes that there is not a **single** allegation that pertains to any OPWDD institution other than Fravor Road." *Id.* (emphasis in original). According to Defendant Delaney, Michael no longer resides at Fravor Road IRA and Defendant Hillard was removed from the Fravor Road IRA at the conclusion of an investigation into allegations of abuse and has no contact with him or supervisory responsibilities over any OPWDD employees who continue to work with Michael at the Central Square IRA. *See id.* at 15-16. As such, Defendant Delaney argues that, even if the supervisory claim against Defendant Hillard is not dismissed, she is still entitled to dismissal because the supervisory claim against Defendant Hillard does not allege an ongoing violation of federal law. *See id.*

Defendant Delaney further notes that, "[i]n addition to seeking injunctive relief requiring the production of a '1:1 aide' for [Michael], Plaintiffs also seek an 'order requiring defendants to establish a fund with sufficient resources to place [and keep] Michael in . . . an independent living facility, or other similar arrangement, in which he shall receive constant and direct care and the other resources his disability requires.'" Dkt. No. 430-1 at 16 (quoting Dkt. No. 53 at 40).

6

Defendant Delaney contends that this Court has "no authority to order such relief under *Ex parte Young* and its progeny." *Id.*

The Eleventh Amendment provides a state with sovereign immunity from suit. *See Virginia Office for Protection and Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) (citation omitted). "[A]bsent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Id.* at 1638 (citation omitted). Generally, New York and its agencies enjoy sovereign immunity from suit in federal court under the Eleventh Amendment. *See Woods v. Rondout Valley Central Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (holding that the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities) (citation omitted).

In 1908, the Supreme Court decided *Ex parte Young*, 209 U.S. 123 (1908), which established an exception to the Eleventh Amendment sovereign immunity protection afforded to the states. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Com'n. of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 117 S. Ct. 2028, 138 L. Ed.2d 438 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)). The exception is due to the fact that "[r]emedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." *Green v. Mansour*, 474 U.S. 64, 68 (1985) (citation omitted). The Supreme Court, however, has repeatedly held that the *Ex parte Young* exception is inapplicable when the asserted claims seek only retroactive relief. *See id.*; *see also Pennhurst*, 465 U.S. at 102-03.

"Under *Ex parte Young*, the state officer against whom a suit is brought 'must have some connection with the enforcement of the act' that is in continued violation of the law." *In re Dairy Mart Convenience Stores, Inc. v. Nickel*, 411 F.3d 367, 372-73 (2d Cir. 2005) (quoting *Ex parte Young*, 209 U.S. at 157). "So long as there is such a connection, it is not necessary that the officer's enforcement duties be noted in the act." *In re Dairy Mart*, 411 F.3d at 373. Deciding whether or not a state official has violated federal law, however, "affects both the initial immunity inquiry as well as the ultimate decision on the merits." 17A James Wm. Moore *et al.*, *Moore's Federal Practice* § 123.40[3][a] (3d ed. 2004); *see also In re Dairy Mart*, 411 F.3d at 374.

Although Plaintiffs argue that they are seeking prospective injunctive relief, the allegations in the amended complaint make clear that their claims relate to the care Michael was receiving at the Fravor Road IRA. *See* Dkt. No. 53. After Michael was moved to the Central Square IRA, Plaintiffs amended the complaint and indicated that he no longer resides at the Fravor Road IRA. *See id.* at ¶¶ 1, 12. Despite this amendment, the only allegations relating to the Central Square IRA allege that Michael currently resides there. *See id.* Nothing in the amended complaint alleges a continuing pattern of violations occurring at that facility. Further, no employees of the Central Square IRA were named in the amended complaint. Without such allegations, it is clear that the amended complaint seeks compensation for past harms, not the prospective relief permitted by the *Ex parte Young* exception.

Moreover, as Defendant Delaney correctly notes, this Court's June 8, 2016 Memorandum-Decision and Order disposed of each and every one of Plaintiffs' allegations concerning an alleged ongoing violation of federal law. After that decision, the only claims remaining concern four isolated allegations of past abuse against Defendants Maynes, Spencer and Hillard. *See* Dkt. No. 423 at 126-28. Although Plaintiffs' amended complaint suggests that they seek prospective

relief, the only remaining allegations pertain to past violations, ending once Michael was moved from the Fravor Road IRA to the Central Square IRA in 2012. The relief sought, including the establishment of a fund to pay for Michael's placement and care and a request for one-to-one staffing, cannot be properly characterized as "prospective." *Jackson v. Battaglia*, 63 F. Supp. 3d 214, 220-21 (N.D.N.Y. 2014). None of the remaining Defendants have any contact with Michael in any capacity. Plaintiffs' conclusory assertions that the remaining allegations represent ongoing substantive due process claims are unpersuasive since Michael no longer resides at the Fravor Road IRA, and Defendants Maynes, Spencer and Hillard have no contact with him or those who work at the Central Square IRA where Michael presently resides. *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (holding that the *Ex parte Young* exception requires an "'ongoing violation of federal law'") (quotation omitted). The expenditure of state monies to establish a fund to care for Michael would not bring the state into conformance with federal law, but would be intended to compensate Plaintiffs for past acts that are no longer occurring. Such expenditures are exactly the type of remedy that is prohibited by the Eleventh Amendment.

To the extent that the amended complaint seeks an order "enjoining Defendants from engaging in abusive or neglectful conduct toward Michael," Plaintiffs lack standing to obtain such relief. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). "The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Id.* at 494. As discussed, Plaintiffs' claims are now limited to four isolated incidents of abuse that allegedly occurred while Michael was a resident at the Fravor Road IRA. These isolated incidents, allegedly perpetrated by individuals who no longer have any contact with Michael, do not create a real and immediate

threat necessary for Plaintiffs to seek such relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 106-07 (1983).[3]

Finally, the Court finds that this result is further supported by the fact that discovery in this matter was limited "to the period during which Michael resided at Fravor Road[.]" Dkt. No. 443 at 10. Moreover, as Plaintiffs acknowledge, the Court previously held that any claims arising after Michael moved to the Central Square IRA at the end of 2012 must be asserted in a new lawsuit. *See id.* In fact, Plaintiffs filed such a lawsuit with the New York State Court of Claims "arising from specific incidents of abuse and neglect at the Central Square IRA, where Michael now resides." *Id.* Although Plaintiffs amended complaint attempted to portray rampant, systemic failures concerning the care Michael received while at the Fravor Road IRA, those claims were dismissed when the Court granted the pending motions for summary judgment. The only claims to survive summary judgment concern four isolated incidents of alleged abuse, which cannot support Plaintiffs' claim for prospective injunctive relief against Defendant Delaney.

Based on the foregoing, the Court grants Defendant Delaney's motion to dismiss.

## IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

---

[3] Plaintiffs argue that Defendant Delaney's motion should be denied because "they also continue to have supervisory claims against defendant Hillard in her individual capacity." Dkt. No. 443 at 9. While the Court has declined to dismiss this claim at this time, the Court nonetheless finds that this claim is insufficient to support their claim against Defendant Delaney. Plaintiffs do not dispute the fact that the amended complaint does not contain a single supervisory claim that is unique to Defendant Hillard. Further, Plaintiffs presented no unique factual allegations against Defendant Hillard in their supplemental responses to her interrogatories. Given the Court's determination that the Supervisory Defendants were entitled to summary judgment as to Plaintiffs' substantive due process claims in its June 8, 2016 Memorandum-Decision and Order, Defendant Hillard is almost certainly entitled to the same relief as to the supervisory claim asserted against her if she should move for such relief.

**ORDERS** that Defendant Delaney's motion to dismiss is **GRANTED**; and the Court further

**ORDERS** that Defendant Delaney is **DISMISSED** from this action; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 11, 2017
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge